UNITED STATES FEDERAL DISTRICT COURT

DISTRICT OF NEBRASKA

| | |
|---|---|
| RICHARD JEREMIAH PREECE,<br>an individual<br><br>        Plaintiff, | Case No. 8:-cv- 13-_____ |
| v. | |
| THE COVENANT PRESBYTERIAN<br>CHURCH,  a Nebraska non profit domestic<br>corporation,<br><br>        Defendant. | COMPLAINT |

## INTRODUCTION

1.     Richard Jeremiah Preece ("Mr. Preece") worked for The Covenant Presbyterian Church ("the Church") beginning August 1, 2010, as a Director of Youth.

2.     Mr. Preece is a victim of sexual harassment.  He was sexually harassed by one of the Church's senior male pastors, Pastor Jeremy Grant.  Mr. Preece first advised the Church of Pastor Grant's unwelcome, inappropriate and objectionable conduct by informing an assistant pastor, Pastor Graham Bailey.  Pastor Bailey acknowledged to Mr. Preece that he had witnessed the inappropriate homosexual conduct described by Mr. Preece and was aware of the problem  with Pastor Grant.

3.     In addition, Mr. Preece reported the sexual harassment to the Church's Volunteer Board (the Board").  The Board manages the employment relationships of the Church's staff.  Mr. Preece informed the Board of Pastor Grant's objectionable conduct and complained about the sexual harassment he suffered.

4.     Pastor Grant's harassment, the effects of his harassment, and the impact the harassment had on Mr. Preece's home life, contributed to strife in Mr. Preece's marriage, which ultimately ended in divorce.

1

## VENUE & JURISDICTION

5.     This matter arises under federal and state law.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 based on Mr. Preece's federal claims under Title VII, 42 U.S.C. § 2000e.  This Court has supplemental jurisdiction over Mr. Preece's state law claims pursuant to 28 U.S.C. § 1367.

a. The Nebraska Attorney General determined in Opinion No. 100 (April 28, 1983), that Nebraska Revised Statute § 48-1103(1) does not create a blanket exemption from FEPA for religious organizations.

b. The State of Nebraska (via the Nebraska Equal Opportunity Commission ("NEOC")) has jurisdiction to investigate claims of discrimination and harassment based on race, color, sex, disability, marital status and national origin which have been filed against religious organizations as employers.

6.     Venue is proper in this district pursuant to 28 U.S.C § 1391(b)(2), because the acts forming the basis for this Complaint were orchestrated from, planned in and conducted in this District.

## PARTIES

7.     Mr. Preece is now a citizen and resident of Chicago, Illinois.  At the time the events set forth in this Complaint occurred, Mr. Preece was a resident and citizen of Omaha, Nebraska.

8.     Covenant Presbyterian Church ("the Church") is a Nebraska non-profit domestic corporation located at 15002 Blondo Street, Omaha, NE 68116.

## FACTUAL BACKGROUND

9.      Mr. Preece was actively employed by the Church as Director of Youth from August 2010 until July 3, 2012.  The Church's governing group, "the Session," then asked Mr. Preece to take time off work.  He was not allowed to return.

10.     When his employment with the Church commenced, Mr. Preece was married.  Mr. Preece sought a legal separation in July 2011, after learning his wife surreptitiously was using and abusing his son's prescription drugs.  Her conduct put his children's safety at risk.  In December 2011, Mr. Preece filed for divorce.  He is now single and has custody of his four (4) children.

11.     During Mr. Preece's employment, Jeremy Grant was the Church's Executive Pastor and Mr. Preece's direct supervisor.  From October 2010 through October 2011, Pastor Grant sexually harassed Mr. Preece.  On a daily basis, Pastor Grant inundated Mr. Preece with episodes of uninvited touches, elongated frontal body hugs, back rubs and neck massages, private office visits, and unsolicited invitations for drinks, dinner and companionship.  The following examples provide only a snapshot of the types of ongoing and unwelcome conduct perpetrated by Pastor Grant on a daily basis, and are not intended to include all conduct perpetrated by Pastor Grant.

    a.  **Meeting in Supervisor's Office.**  On a regular basis, Mr. Preece was required to meet with Pastor Grant to discuss routine employment matters.  Mr. Preece sat on the sofa in Pastor Grant's office, while Pastor Grant sat next to the sofa in a chair.

        1.  Mr. Preece disclosed that he and his wife were going through difficulties in their marriage.  Pastor Grant immediately went down on his knees, directly in front of Mr. Preece, ostensibly to pray.  Pastor Grant put his clasped hands on Mr. Preece's knees and bowed his head directly into Mr. Preece's lap.  This posture alarmed Mr. Preece and made him extremely uncomfortable.

3

2. The situation continued to alarm Mr. Preece stood up and Pastor Grant proceeded to tightly hug Mr. Preece for "too long" and with full frontal body contact.

3. Later, that same night, Pastor Grant initiated a "chat" conversation with Mr. Preece via his home computer. Pastor Grant asked Mr. Preece to meet him that night so they could talk. Mr. Preece declined.

b. <u>Invitation to Granite City</u>. Also in January 2011, Mr. Preece received another invitation. Pastor Grant frequently invited Mr. Preece to go to Granite City with him. Mr. Preece felt compelled to accept some of the many invitations Pastor Grant extended, although he remained apprehensive because of Pastor Grant's ongoing sexual advances. Mr. Preece felt pressured to accept, however, because Pastor Grant was his supervisor. While at Granite City, Pastor Grant put his arm around Mr. Preece, squeezing his shoulder. Pastor Grant leaned in toward Mr. Preece, and lay his head on Mr. Preece's shoulder. Amidst soft moans, Pastor Grant asked, "What do we do now?" At this, Mr. Preece stated he was going home and left.

c. <u>Other & Ongoing Social Invitations – 7M Grill</u>. While Director of Youth, Mr. Preece conducted a CPC Youth Group that met weekly on Wednesday evenings. Associate Pastor Baily assisted.

1. Pastor Grant asked both Pastor Baily and Mr. Preece to meet him for drinks after they completed their responsibilities with CPC Youth. Pastor Grant arrived at 7M Grill first, outfitted in a black turtleneck with black slacks. When Mr. Preece and Pastor Baily arrived, Pastor Grant waved them over a table and pointed to a bottle of wine and two already poured glasses waiting for them.

2. Pastor Grant did not drink the wine; he was drinking a martini. Mr. Preece preferred beer, but drank the poured wine so not to offend his supervisor. After drinking only one glass of wine, both Mr. Preece and Pastor Bailey felt intensified effects, becoming extremely intoxicated and disoriented. Both men independently concluded their wine had been laced with an illegal, predatory "date rape" type drug.

4

3. While at 7M, Pastor Bailey directly stated to Pastor Grant: "You're gay." Pastor Grant said, "Yes, I am."

d. **Mission Trips – New Orleans 2011.**   In August 2011, Mr. Preece accompanied approximately 25 of the Church's teens on a trip to New Orleans. Two other staff members also went on the trip.  Pastor Grant decided he would accompany them.

1. When the teens were in bed the first evening, Pastor Grant asked Mr. Preece to go out for a few beers with him.  Pastor Grant told Mr. Preece, "I need to talk to you.  I need guidance."  Pastor Grant told Mr. Preece about the troubling aspects of his own marriage and the difficulties he was experiencing with his then-wife.

2. During the same trip to New Orleans, Pastor Grant made very strong sexual advances toward Mr. Preece.

12.     In January 2012, Mr. Preece attended a meeting of the Church's Volunteer Board.   The Volunteer Board handles the Church's personnel and employment matters.  Mr. Preece informed the Volunteer Board about the invitations he received from Pastor Grant.  Mr. Preece also provided the Volunteer Board with the details of Pastor Grant's ongoing sexual harassment.

13.     In mid-April 2012, Mr. Preece's divorce became final and the Court awarded him full custody of his four (4) young children.  Several parents of the Church's teens raised concerned about Mr. Preece's status – a divorced single parent with custody of four young children – and the time necessary to parent the children.  The teen's parents were concerned Mr. Preece's responsibilities would not allow him sufficient time to spend on the job with Church youth.

a. The parents brought their fears to the attention of the Interim Pastor, who replaced Pastor Grant.  The Interim Pastor suggested an "improvement plan" for Mr. Preece.  This plan included attending Sunday services, securing volunteers for Youth Group programming and teaching Sunday school classes.

b. In approximately June 2012, Steve Johnson, the Church Human Resource Elder, and Pastor Kevin McDonald contacted Mr. Preece. They asked Mr. Preece if he wanted time off from his position as Director of Youth. They specifically informed Mr. Preece they were asking because they viewed his work product as suffering as a direct result of his divorce.

c. Mr. Preece informed Mr. Johnson and Pastor McDonald he did not want to resign. He told them he desperately needed his job and his income. Given no other options, however, Mr. Preece was forced to accept the Church's offer of time off under the circumstances.

14. While on leave, Mr. Preece helped his children cope with their new life circumstances. At the same time, Mr. Preece also was trying to reconcile his own anger and frustration over his divorce, as well as lingering effects of sexual harassment he suffered at Pastor Grant's hands.

a. On July 3, 2013, Mr. Johnson called Mr. Preece, asking him whether he intended to resign or return to work. Mr. Johnson informed Mr. Preece that if he resigned he would receive three months of severance pay. Mr. Preece did not provide an immediate response.

b. Mr. Preece's next contact with the Church was on July 16, 2012, less than two (2) week later. Mr. Preece received a letter from the Church's Business Administrator, Stephanie Hawks. She informed Mr. Preece the letter was "official notice" that his position was terminated, "at his request." Mr. Preece had made no such request.

c. Despite being promised three months of severance pay, Mr. Preece received none. Individual members of the Church gave him gifts totaling $1,500 from a collection of benevolence gifts donated for him.

15. Mr. Preece was terminated due to his sex, marital status and in retaliation for his complaints about Pastor Grant.

# MR. PREECE'S CLAIMS
## AGAINST COVENANT PRESBYTERIAN CHURCH

16.     Since 2012, the Church discriminated against Mr. Preece on the following bases:

      a.  Sex, in violation of Title VII of the Civil Rights Act of 1967, as Amended, 42 U.S.C. §2000e-2, *et seq.* and the Nebraska Fair Employment Practices Act, ("NFEPA"), Neb.Rev. Stat. §48-1104;

      b.  Marital status in violation of the NFEPA, *id.,* and

      c.  Retaliation, in violation of Title Vii of the Civil Rights Act of 1967, as Amended, 42 U.S.C. §2000e-3, *et seq.* and the NFEPA, 48-1114(3).

17.     It is illegal for an employer to discriminate against an employee based on sex or to harass an employee based on sex:

> It shall be an unlawful employment practice for an employer –
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex;
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's ... sex.

42 U.S.C. § 2000e-2(a).  Likewise, the NFEP prohibits the same conduct based on sex, sexual harassment, and also includes marital status:

> It shall be an unlawful employment practice for an employer:
>
> (1) To fail or refuse to hire, to discharge, or to harass any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex, [or] marital status . . . .

Neb. Rev. Stat. § 48-1104(1).

18.     Finally, both state and federal antidiscrimination laws prohibit retaliation:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by

> this chapter, or because he has made a charge, testified, assisted
> or participated in any manner in an investigation, proceedings, or
> hearing under this subchapter.

42 U.S.C. § 2000e-3. According to the NFEPA:

> It shall be an unlawful employment practice for an employer
> to discriminate against any of his or her employees . . .
> because he or she (1) has opposed any practice made an
> unlawful employment practice by the Nebraska [FEPA]

Neb. Rev. Stat. § 48-1114.

19.     The Church's treatment of Mr. Preece directly violated federal and state employment statutes and forms the basis of his Complaint.   The Church's conduct is not exempt from jurisdiction.   There is no excuse for the Church's conduct.   The so-called "ministerial exception" to federal discrimination laws provides the Church no refuge in the circumstances of this case.

20.     Mr. Preece dual filed a charge of discrimination with the Nebraska Equal Opportunity Commission and the Equal Employment Opportunity Commission, Charge No. NEB 2-12/13-10-43380-RS

21.     He received a right to sue letter on May 31, 2013.[1]

### FIRST CLAIM

### SEX HARASSMENT BY THE CHURCH –
### VIOLATION OF TITLE VII & NEBRASKA FEPA
### (42 U.S.C. § 2000e-2; Neb. Rev. Stat. § 48-1101 *et seq.*)

22.     Mr. Preece incorporates by reference paragraphs 1-22, inclusive, as if fully set forth.

23.     When he started his employment, Mr. Preece worked for and was supervised by Pastor Jeremy Grant.   *See* Paragraph 11, *supra*.   Mr. Preece was qualified and experienced.

24.     While employed, Mr. Preece was a victim of his supervisor's uncontrolled sexual interest.   Mr. Preece experienced Pastor Grant's uninvited physical advances, verbal innuendo and his constant abuse of pastor Grant's role as Mr. Preece's

---

[1] A true and correct copy of the Right to Sue Letter received from the EEOC is attached as Exhibit A to this Complaint and incorporated here.

supervisor. The harassment by Pastor Grant continued throughout Mr. Preece's employment, until Pastor Grant took a leave of absence in November 2011.

25.     The Church's staff, *i.e.,* Assistant Pastor Bailey, was on notice of the sexual harassment as early as August 2011. The Church's Volunteer Board specifically questioned Mr. Preece in April 2012 about the sexual harassment to which he was subjected by Pastor Grant.

26.     Pastor Grant's ongoing, unchecked, touching, caressing and sexual contact was constant. It occurred at the workplace and out of the workplace through invitations to evening events, as well as through computer contacts and telephone calls to Mr. Preece after work.

27.     Pastor Grant's harassment made the working conditions intolerable for Mr. Preece. By failing to put an end to the ongoing, known violations of the NFEPA and Title VII provisions making sexual harassment illegal, the Church was responsible for the harm to Mr. Preece inflicted by Pastor Grant.

WHEREFORE, Mr. Preece requests judgment ordering an award of damages pursuant to 42 U.S.C. § 2000e-2 and Neb. Rev. Stat. § 48-1119(4) based on the conduct of Pastor Grant and the Church's failure to take steps to control such conduct.

## SECOND CLAIM

### MARITAL STATUS DISCRIMINATION BY THE CHURCH–
### IN VIOLATION OF NFEPA
### (Neb. Rev. Stat. § 48-1101 *et seq.*)

28.     Mr. Preece incorporates by reference paragraphs 1-26, inclusive, as if fully set forth.

29.     Nebraska defines "marital status" as the status of a person whether married or single." Neb. Rev. Stat. §48-1102(12) (Cum.Supp.2004). There is no Nebraska case law addressing marital status discrimination. *Adams v. Tennesco*, 358 F. Supp. 878, 879 (D. Neb. 2005).

30.     A claim for marital status discrimination follows the burden shifting McDonnell Douglas analysis. *See Freeman v. Ace Telephone Ass'n*, 404 F.Supp.2d 1127, 1136 (D. Minn. 2005) (citing *Gunnufson v. Onan Corp.*, 450 N.W.2d 625, 630 (Minn. Ct. App. 2001)). A claim for marital status discrimination requires a showing that

the discrimination was "directed at the marital status itself." *Kepler v. Kordel, Inc.*, 542 N.W.2d 645, 647 (Minn. Ct. App. 1996).   Marital status discrimination includes discrimination on the basis of the identity or situation of a spouse.  *Taylor v. LSI Corp. of Am.*, 781 N.W.2d 912, 917 (Minn. Ct. App. 2010).

31.   At the start of his employment, Mr. Preece was a married individual with a wife who was abusing his son's medications.   His status changed in 2012, to that divorced individual with custody of four children.  The Church cited Mr. Preece's status as a divorced employee as the basis for its decision to direct Mr. Preece to take a leave of absence.  The Church members of the Volunteer Board (employment committee) informed Mr. Preece directly that as a divorced parent, with custody of four children, they feared he would not be able to do his job and as a single parent his status would impede his ability to do his job.

32.   Neither the Church, its Volunteer Board, or any other formal/informal Church group gave Mr. Preece any further information whatsoever as the basis for termination.  In fact, the illegal basis for Mr. Preece's termination was already explicitly rooted in his marital status.

WHEREFORE, Mr. Preece requests judgment ordering an award of damages pursuant to Neb. Rev. Stat. § 48-1119(4) based on the Church's discriminatory decision to end his employment because he wife originally was abusing drugs and subsequently because he was divorced, single and in custody of his children.

### THIRD CLAIM

**RETALIATION BY THE CHURCH FOR COMPLAINING
ABOUT SEX DISCRIMINATION AND HARASSMENT
IN VIOLATION OF TITLE VII & NFEPA
(42.S.C. § 2000e-2; Neb. Rev. Stat. § 48-1101 *et seq.*)**

33.   Mr. Preece incorporates by reference paragraphs 1-32, inclusive, as if fully set forth.

34.   "[T]he elements of a prima facie case for retaliation are that the plaintiff must show that (1) he or she was engaging in a protected activity, (2) he or she suffered an adverse employment decision, and (3) there was a causal link between the protected activity and the adverse employment decision." *Helvering v.* UPRR, 13 Neb. App. 818,

10

703 N.W.2d 134 (Neb. App. 2005); *Rose v. Vickers Petroleum*, 4 Neb. App. 585, 546 N.W.2d 827 (1996). See *Wolfe v. Becton Dickinson & Co.*, *supra* (prima facie case consists of discharge following protected activity of which employer was aware).

35.     "An inference of a causal connection between [protected conduct] and [an adverse employment action] can be drawn from the timing of the two events, but in general more than a temporal connection is required to present a genuine factual issue on retaliation." *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1119 (8th Cir.2006) (citation omitted).

36.     Mr. Preece met with and informed the Volunteer Board, as a group, that Pastor Grant's sexual harassment was known to Assistant Pastor Baily.  At about the same time, Mr. Preece's divorce became final and he became a single male with custody of four children.

37.     Within mere days after these two (2) events, two members of the Volunteer Board approached Mr. Preece.  They informed him that he was going on a leave of absence.  This ended up being a leave of absence from which he was never allowed to return.

WHEREFORE, Mr. Preece requests judgment ordering an award of damages pursuant to 42 U.S.C. § 2000e-2 and Neb. Rev. Stat. § 48-1119(4) based on the church's retaliation against him for complaining about the sexual harassment engaged in by Pastor Grant.

## REQUEST FOR RELIEF

WHEREFORE, Mr. Preece requests judgment in his favor and awarding:

1.     Damages for  back pay Mr. Preece's lost from the date of his discharge;

2.     Damages for Mr. Preece's lost and future wages for his illegal and discriminatory discharge;

3.     Damages for Mr. Preece's emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life;

4.     Damages for Mr. Preece's out-of-pocket expenses for mental health treatment;

5.      Punitive damages for the Church's knowing violation of federal discrimination laws;

6.      Costs and attorney fees;as allowed by law, and

7.      Such other and further relief as the Court deems appropriate.


**PLAINTIFF MAKES DEMAND FOR TRIAL BY JURY.**

RICHARD JEREMIAH PREECE, Plaintiff,


By: /s/ Terry A. White
        Terry A. White #18282
        Katherine A. Busch #22493
        **THOMPSON LAW OFFICE, PC, LLO**
        13906 Gold Circle, Suite 201
        Omaha, NE 68144
        (402) 330-3060
        *Attorneys for Plaintiff*

12